And now we'll start with our first case of the morning, Baker v. United States. Good morning, Your Honors. Alison Brill, Assistant Federal Public Defender. On behalf of Stephen Baker, I'd like to reserve three minutes for rebuttal. Granted. The record is clear that trial counsel failed to tell Mr. Baker that conviction on all counts at trial would mandate the District Court Raise your voice just a tad. Would mandate the District Court impose 57 years imprisonment. The legal conclusion that this was constitutionally defective easily flows from this error. 57 mandatory years, a functional sentence of life imprisonment for death in prison, was never part of the discussion about whether to accept or reject the plea. Had it been explained, there's a reasonable probability that Mr. Baker would have accepted the plea that was offered. How do you get around the adverse credibility determination? That's probably the toughest thing that you have to surmount. So courts clearly consider what, particularly after an evidentiary hearing, what the defendant has said, but even if the District Court had credited Mr. Baker's testimony, the subjective self-serving testimony of a defendant is typically not enough to get over the threshold anyways. So the credibility determination is part of the inquiry, but courts more often look to objective parts of the record not dependent on how a defendant testifies and how the District Court perceives him. But here, don't we have to find that it was clear error in terms of a credibility determination by the District Court? You want us to look to some additional evidence that we'll talk about, but ultimately you're asking us to look to that to conclude that the adverse credibility determination is clearly erroneous, right? This court can credit, as a factual finding, the District Court's adverse credibility finding, but that is not the entire inquiry. This is a mixed question of law and fact that comes from Strickland, and so it can't just be that the credibility determination is the ultimate conclusion as well. It has to be a separate inquiry. Strickland has defined it how it's been reaffirmed in the Supreme Court and in the circuit, is that there's two parts to the inquiry. So is what you're saying that had he been told that the mandatory minimum for just the gun charges under the then existing sentencing guidelines was 57 years instead of the 21 years his counsel told him he would not have rolled the dice because it was just too significant a disparity. He was offered 15 to 17. He was considering, at least for those particular charges, 21, but in fact it was 57. Yes, Your Honor, the magnitude of that 57 years really should weigh heavy in this analysis. Ms. Brill, the evidence also reflects that he was willing to risk 51 years, which also would effectively be a life sentence since that would have made him 90 or so. So is there really a difference between, you know, you're arguing the 57-year mandatory minimum is effectively a life sentence, but he was willing to risk 51? So the 51 or 56, however we look at the record, was not the mandatory minimum. That was what he thought was the max. And a mandatory minimum sentence is just of a different quality of sentence that the district court had no discretion in. And so, you know, defense counsel tells their client a lot of different things, what could happen at sentencing, but this was a definite, and it's just different. So you're saying to us now that the extent of the disparity is a consideration. But your briefing, at least at one point, seems to say that per se, that a disparity of this magnitude is sufficient. You know, as I look closer at the record preparing, I think that I would never say that per se was what this court would apply as a standard. Strickland has always a fact intensive inquiry. And so that if I said that or suggested in my briefing, that is not how I would want the court to rule. I would ask this court to consider the magnitude, which really wasn't in the district court's analysis, how 57 years plays up against all the other factors that the court was considering for credibility. And so what's the test? If we're going to say that there's some, at some degree of magnitude of disparity, that that's enough to even overcome an adverse credibility determination, where would you say we draw the line and how do we articulate that test? So the beginning of the test is the qualitative difference between what was offered and what was eventually imposed. Right. So, you know, Lafler was three and a half times greater. In day it was five on a plea. He got 22. And so this is of a different magnitude. And this is why maybe perhaps my briefing suggests. In effect, what you're saying is there are some cases in which the disparity is so great and you're kind of leaning back towards your per se statement that you made in your brief, which you're now saying probably shouldn't go that way because you'd be leading with your chin in terms of having another court. Take a look at this. I don't know what leaning with the chin means. No. So get whacked. Upside the head. Okay. Well, that's not where I want to be. This is a qualitative difference. And functional life imprisonment really isn't in any of the cases that I've seen. This is, this is a different kind of case. And so the question is how it weighs in the analysis. And so what is the test sufficient to undermine confidence in the outcome? It's the same test that we've had before. Argument seems to be not only the magnitude, but the magnitude combined with the mandatory nature of the 57 years. So in other words, if he had been advised, it were 51 years mandatory. You wouldn't necessarily say it's as strong as here where the 57 is mandatory. I think 51 and 57 mandatory, I would say are in the same category. Would I have the same argument if I, if it was 10 years mandatory, probably not because perhaps then the guideline would be higher than the mandatory minimum anyways. So it's how it all functions in the sentencing calculation. So wouldn't, wouldn't the test be, would the outcome be different if Mr. Baker was properly counseled? Isn't that the question and therefore the test and your response to that test is obviously that the outcome would be different despite the adverse credibility determination, because. Because there's objective evidence in the record, aside from Mr. Baker's testimony that he was contemplating a plea. This was not somebody that was completely opposed to any plea, you know, filed a motion against his attorney that he was being pressured to plead. He was available to plead. He was concerned about his children. He was a rational person in terms of making a decision. That cuts both ways, right? Because he did want to see his children graduate. That's an argument as to why he turned down the 15 to 17 year old. Sentence in the plea offer. So they're fairly close counter offers. I mean, they're not that different, particularly when you, you play out how many, how much time you would actually do in the bureau of prisons and the adequate advice might've tipped the scale. That 17 and 13 didn't make that much of a difference. May I ask you a factual question? Your brief. I think both briefs say that the offer expired on March 17th, but the briefs also suggest it would have remained open. So was this. Offer actually even viable. The day that this meeting took place. March 21st. March 21st. Was it even open anymore? So I don't have that information, but I don't think that it was expired either. I imagine there was some extension that was made. There's nothing. We didn't see anything in the record. Is there anything in. No, we assume we're all assuming that that plea was open at that point. And that the district court would have accepted this plea. And then he then rejected it. And then it was indicted. On all six counts about a month later. And under Lafleur, don't we also have to have some indication that the district court would have accepted this plea? Is there anything in the record to suggest that. There's nothing in the record to suggest that the district court wouldn't have, there was a cooperating witness that. I'm sorry.  And then it would have pleaded guilty to the two counts as well. To essentially the same. So it was. A plea to a robbery and a nine 24 C accepting responsibility for the two other. Robberies. I don't know that the co-defendant. Accepted responsibility for the other. For offenses. However, The plea only had him accepting responsibility for the two robberies, but not the two nine 20. Additional two nine. Correct. But it was sort of the discussion and the relevant conduct, but just the practice in the district. In the district of New Jersey is that typically when a defendant cooperates, they. Agree that they committed a lot of offenses. So I would imagine that this witness. That may be a good segue to. Let's just assume for the moment that we agree with you. That there was inadequate assistance of counsel. And even that there was. Prejudice. And therefore you have a strickling violation. What's the remedy. I don't see anything in the briefs as to what the remedy you suggest, nor is there anything I say in the government's brief. I apologize for that. The constitutional injury deprived him of the opportunity to receive that And let the district judge decide as the district judge may. Yes. Okay. And it would. Under Lafleur, it would be up to the district court to decide. Whether or not to vacate the additional nine 24 C's. For instance, it could just totally reject. The plea agreement. I'm not sure. I think it's the one advantage you would get. The one disadvantage. Is if the offer needed to be remade. And he accepted it, which. I presume he would. Then. You would get no stacking of the three nine 24 C. So it's not seven 25, 25 57. It's now seven, seven, seven 21. So the original offer was not to the nine 24, not to three counts of nine 24 C. So there would be no stacking, but. But even so. You, you. Would view this as a new sentence. A new judgment where as a result. He'd have the benefit of intervening law. May I ask you. I'm sorry. Go ahead. What significance is there looking at the. What's in the record. About the meeting on March 21st. Seems to me that. The district court implicitly found your client's testimony credible. That he was advised that the robberies topped out at 10. And it seems to be, there was some sort of stacking calculation based on these notes. That 56 stacking all the 10. Would be the max. What significance, if any, is there that the robberies actually maxed out at 25. And that stacking them would be 75. I'm just thinking about all the different numbers that were thrown out at that hearing. And actually the max was life. Right. So it's. Yeah. Right. But it wasn't even accurate numbers. I think the significance was that there was a lot of deficient. Advice happening at that time. And that this was a state practitioner. And her understanding of, of the nine 24 C stacking provision. Reflected her understanding of New Jersey law. And so a lot of the confusion I think about all the different advice is, is really just. Significant that she was not giving me adequate. Is it cured at all by the fact that the. Guidelines and the maxes are actually not for the 50. We know that the 25 stacking. For the nine 24. Are not nine 24 seats are not laid out in the plea agreement. But the plea agreement does lay out the life stat max. And this 25 year stat max. Does that cure at all? Any of the deficient advice. When, when defendants are advised about. In the maximum terms, it's always, it's often a whisper. That's not really going to happen. So I don't think that a cure is something that would happen. The mandatory minimum term. In fact, when Mr. Baker saw the PSR and was advised about the 57. His lawyer still was saying, I don't think that's going to happen. And at the sentencing hearing, she was. Pitching an eighth amendment violation for the stacking provision. So I actually think that she's over and over and not adequately advising him of, of what federal law is. It doesn't cure it to my mind. For purposes of a, of a disparity. What are we actually comparing? A mandatory minimum. A maximum potential exposure. What are we supposed to be comparing? When you're asking us to look to the extent of disparity here. To conclude that prejudice is established. If I may. Yes. I don't think that disparity is in the analysis. I mean, I can tell you that he got six times what his co-defendant got. After trial. And he also got this. You know, Implicit or this life sentence, basically. I'm looking at other cases where there's a lot lower of a. Disparity between. Oh, sorry. Are you asking me about a disparity? Between what sentence he was going to receive and what sentence was imposed or between other defendants. No. Between the plea that was discussed and the sentence. Forgive me. Definitely important. When you have a mandatory sentence of life imprisonment, that's the kind of disparity that it's qualitatively different than any other one. So I would say that this case stands out. Not as a per se rule, but that the weight of that kind of disparity is just fundamentally different. And the contours as, as we go forward. Of what disparities would suffice to show prejudice depending on all the other facts on the record, right? This is. This is not just that the disparity is not just the overwhelming piece. There's all the other facts on the record. And so I could imagine a lot. Closer of a disparity and still the court finding prejudice based on. You know, other factors, like if there was an immigration consequence, if there's other things that were really teeing up a reason to plead guilty or go to trial. I have one other question for you. My colleagues have other questions at this point. I want this. Okay. Relating to the assertions of innocence. Why don't you go first? Well, that's where I wanted to take this. Which is you've made the argument that it was error for the district court to consider at all protestations of innocence and that that would be. That's a fifth amendment violation. But. District courts take into account acceptance of responsibility all the time. And. And when there's acceptance responsibility, if it's the day before the trial, or it's, it's much earlier, you know, for example. So how, how is it that. It would be unconstitutional in making the evaluation of prejudice for a district court to even consider. Processations of innocence. It's on the line of affecting constitutional rights. And that's why I would say that it could be a constitutional violation, but innocence claims in general are very gray. And, you know, we know that there would be reasons for innocent people to plead guilty and vice versa. And so I think that courts don't really look that closely into that inquiry as, as, again, like a major factor similar to how self-serving statements wouldn't be a major factor in, in the. Total analysis, but, but the point is that. It touches on a very, very sacred constitutional right. And for that reason, it's dangerous to make that a major part of the calculation. You asked my question. All right. Well, I hear from a rebuttal. Thank you. Thank you. Good morning. Your honor. Sabrina comes only for the United States. The appellee in this matter. If I may begin with the clearly erroneous standard, as I know all of you indicated is a high bar here. For Mr Baker to surmount it. It is indeed. And what Baker posits is that there is other evidence in the record that actually undercuts the district court's credibility finding. And I would argue the opposite. There is other evidence in the record that judge Sheridan did not cite to that actually supports his credibility finding. And if this court will permit me to, I'd like to go through them. In addition to what judge Sheridan found supports the adverse credibility finding. There are not just, there's not just a claim of innocence at sentencing, which the government believes, you know, every defendant is obviously permitted to claim innocence at sentencing, preserve his issues for appeal, ask for some sentencing mitigation. But Baker did much more than that. There are eight pages of sentencing transcript where he went off on a soliloquy about he was, how he was innocent, poking holes in the evidence that at trial, claiming that the witnesses against him were not credible. All of those factors in those eight pages. Show his mindset. After conviction at trial. And. You can infer from that what his mindset was before trial. And wanted to take. Significance of that reduced by the testimony we now have with his explanation. That he was doing is making those assertions because his own council. I had told him that he, he needed to. Insist on his innocence. In order to preserve his rights, including through appeal. There's nothing in the record to indicate his council told him to speak at such great length. To contest his innocence. You're saying the extent to which he spoke at sentencing reflects. His desire to contest the charges at trial. That is exactly right. In the face of 57 years mandatory minimum time. Yes. And what I believe he was saying during his sentencing is. I have good claims on appeal. He raised them on appeal and he lost on appeal. He then. And at his first 20 to 55 raised. Eight ineffective assistance of council claims, seven of which went to his council's conduct. At trial again, believing. That he was, as he put it. Legally innocent. Of these charges. And that also shows his mindset. And in fact, during his evidentiary hearing testimony in 2021. He gave a couple answers from which the court could infer. He still is of that mindset. And if I could point this court. To the record, I believe it's pages. 78 and 85 to 86. He gave two. Evasive answers. And we know that the court. In its 2019. Opinion denying most of his ineffective assistance of council claims and ordering an evidentiary hearing. Said that the purpose of the evidentiary hearing was so that the court could evaluate his credibility in person. In his testimony. And there are two instances in his testimony where he gave evasive answers from which one could infer. He really believed his chances were good at succeeding at trial and beating at least. Two of the three robbery counts. First on page 70. Maybe in part because of what his council said to him. In connection with your chances of. It may be, but he still believed it. You know, 10 or 11 years after trial. He still believed his chances were good. On page 78. First of all, he was asked. Whether he told the truth to the sentencing court. About being innocent. And he paused for answering. It was a yes or no question. And he said, yes, I was innocent. And the pause is actually reflected by the court reporter in the transcript in parentheses. And then he replied. Legally. I was innocent. Second on page 86 to 87. He was asked if he thought before trial. That the government's evidence was insufficient. And he replied, yes. When asked if he still thought today. That the evidence was insufficient. He would not answer. He was evasive. The question was asked of him four different ways. The judge instructed him to answer, answer it. And he never really gave an answer. I believe that this shows that he still thinks his chances were good at trial. And. You know, the sixth circuit has said that. Assertions of innocence. Are expected. Especially if you believe yourself innocent. And why is that being held against an individual? Simply because he or she believes. That innocence is actually what the result should be. I understand that we have, you know, acceptance of responsibility and connection with sentencing. And that can. You know, take down a, a sentencing. Point. Can be detracted or taken away. But nonetheless. What is the harm? If you, as a defendant continue to assert your innocence. I think. I'm not saying there's should be a harm in it, but that the district court was permitted to consider. His assertions of innocence, which continued over time. And compare them to what he initially said. In his first 20 to 55 petition. Which was that he had told his counsel at worst. He was guilty of misdemeanor possession of stolen property. He later testified. But she confirmed in her own testimony that he did admit guilt. Consistent. He did evidentiary testimony. That's correct. And he admitted it as well. That before trial, he told her he was guilty of everything. And then four years later in his 20. 14 habeas petition. He does not admit he was guilty. In fact, he says, I told her. I was only guilty of misdemeanor possession of stolen property. So I think. The district court. It was appropriate for the district court to consider all of those different times. That he claimed differently, you know, what he was innocent of and what he was guilty of. Let me ask you this. Even assuming that he thought he had a pretty good chance of getting over. On two additional robberies. It seems like his main. Issue was with the two other robberies. He's got a plea agreement on the table where he only pleads guilty to the one that he thinks he's guilty of. And he's got a plea agreement on the table where he only pleads guilty  And he pleads guilty to the other two. And accepts responsibility for the other two. But his attorney seems to have advised him that would result in an extra 20 years. Cause she stacked them. Whereas in fact, it would only subject him to two more years. Don't you think that matters? Even if someone is contesting their guilt as to those two robberies to know. Well, I'm actually only pleading to the one that I think I'm guilty of. And while I am accepting responsibility for these other two that I can test. It's only two more years versus 50 more years. I mean, how does that not matter? Well, I think you have to look at what it is you're comparing, right? So, so right now your honor is not comparing. 21 years to 57 years. Your honor is comparing the plea offer he got, which would have been to 15 to 17 years, which she accurately advised him of according to judge Sheridan's findings. Versus what she told him he might've gotten, which was either 31 to 51 years or 36 to 56 years. And his response to that was in, even in his evidentiary hearing his response to that was I only would have taken it. If it had been 13 to 15 years, because I knew that I would get out to see my children graduate from high school. So you are crediting his testimony there. On the 31 to 51 years. That's what judge Sheridan credited, right? Yeah. Judge Sheridan did credit him multiple times. I think judge Sheridan. After the evidentiary hearing, he got copious briefing from both parties. And after that, he made credibility findings and factual findings somewhere in Baker's favor and somewhere in the government's favor. Based on the entirety of the record. Can I just ask a dumb factual question? The plea offer was made on February 17 and on its terms, it expired on March 17. Was it extended to your knowledge? You're honored. There doesn't seem to be any evidence in the record one way or the other. The government is certainly not taking the position that it had expired. So just so we have this clear for our purposes, the government doesn't contest deficiency. That is correct. Your honor. If a, if a court finds that defense council predict erroneously predicted a 21 year. Statutory minimum. And in fact, it was 57 years that the government would concede that that would be deficient. But your point is that there, you didn't, you don't see the prejudice. That is absolutely correct. Your honor. Yes. Sorry. I just, also while we're just cleaning up some, some items the, the argument that his claim was untimely. Laughter claim in footnote, the government's not pressing that on appeal. That's correct. The government is not contesting the relation back decision. Okay. And you're also not raising an argument that had Baker accepted the plea, the district court would not have. That's correct. There's no evidence to suggest the district court would not have accepted a plea. Do you, if we were to agree. With. You're opposing council. That this was. A Strickland violation. What would the remedy be? Under Lafler. I believe the remedy is to send it back to the district court. Order the government to reoffer the plea. We assume Mr. Baker would accept the plea. And at that point it would be up to the court to decide. What to do with those six counts. The district court has a complete discretion. Whether to accept it. Correct. Whether to dismiss all six. Four of the six. None of the six and then impose a sentence. Okay. So you're in agreement with. Thank you. Thank you, your honor. As you're pointing to. Developments statements that he made. After the fact. In a statement. Also about the. As children graduating. What. What do you make of the. The. Argument put forward. In a night by the DC circuit. That what really matters is that. He would have weighed these things differently. Had he known accurately. What the. His risk was in going to trial. He might have, but his testimony on that score was just not persuasive. To the district court. Given all of the other factors that the district court considered. And I think your question, your honor really goes to whether there may be. To be some presumption of prejudice. When you have a very large disparity. Between what was erroneously predicted and what in fact was the reality. But I think my adversary agrees. There can't be a presumption of prejudice because as the Supreme court. Has told us time and time again. The court has to consider what this defendant would have done. But isn't the extent of that disparity relevant to what this defendant would have done. I mean, a mandatory minimum for certain offenses of. Like 21 years versus 57. Pretty significant. I would agree. The extent of the disparity is significant. But in terms of considering what he thought at the time. The disparity is really between the 15 to 17 year offer. And the. 30. 31 to 51 years. He may have anticipated. Versus. The 57 year mandatory minimum. Should we be looking to compare. Minimums. Where it's a case where the mandatory minimum is really the. The driver. Of. What would qualify as disparity. Should we be looking to. You know, the mandatory minimum rather than it is. It sounds like you're. You're espousing now. The range. Your honor. I think when this court. Or when any court thinks about deficient performance. They should compare 21 years to 57 years. But when this court thinks about. The probability. Not the probability. The. The. The. Basically. Whether he, whether he would have accepted this plea. Then the court needs to consider. All of the evidence, which indicates he anticipated. 31 to 51 years. Or as he even testified to 36 to 56 years, although the district court. Gave him the benefit of the doubt and agreed. He was anticipating 31 to 51 years. Is your argument. Almost. To me, it sounds like. When you said. Certainly. The disparity might have informed his position, but the district court. Found that that was not credible. So it seems like. Most of your argument here is predicated on. Accepting the district court's credibility finding. That that is correct. And I would encourage this court to accept. The district court's credibility finding both for the reasons cited in the district court's opinion. And for other reasons in the record that support it. And, but for that credibility finding. What would the government's position be? Had the district court not made that credibility finding. In other words, I'm sorry. I don't understand your question. In the absence of finding him incredible on that point. Well, if the district court had found him credible on that point, I think it would have found a reasonable probability that he would have. But guilty. And, you know, but that's not where we are. With the set of facts. Okay. If the court has no further questions. I asked the court to affirm the judgment of the district court. Thank you. Thank you. Ms. Brill. Thank you. Just briefly getting back to the standard. We must imagine what alternative. Scenario might've played out. If the claim there had not occurred. And we're really focusing on that. Small time period. Before he rejected the plea. You know, once, once the indictment came down. At the arraignment, it was already over. And I think the court for, for looking so closely at the record, because it actually, the inquiry here is, is very full. And there's a lot of, what do we make of this? What do we make of that? There's so much of that. That wasn't in the district court's credibility findings or findings of fact at all. That's just sitting there. You know, At what point did he tell his lawyer that he was in fact guilty? There's a lot of questions that could answer our, our, our. Inquiry about that specific time period more closely. And so I asked this court to look at the full context of the proceedings, the magnitude. Of the 57 years. Is there any authority that says that we can't look at anything beyond. The decision to turn in. In terms of chronology. Beyond who turned down the plea. No, no, this court, this court can look at the full picture, but the. What we're looking to understand is what he would have done at that time. You know, and. Would, if the trial lawyer understood the 57 years, would she have advised differently? That's that's the moment that matters. And so everything, the weight that you give to different points of incredibility, perhaps. Really depend on how much that informs that, that small time period. And this person has been incarcerated since what? 2010. 2010. And his kids are actually graduating from high school now. So we're all. Where we thought we were. That frames the question for us differently. I mean, is the test. The question is whether she would have advised him differently. Or if he had that, if he just had the information. You know what he would have chosen to do. Does her recommendation matter? He's working on advice of counsel. And so to think about a different factual scenario where she was advising incorrectly. It's possible that there's more that would come out of it. But of course the inquiry is what the defendant would have done. But he is operating on advice of counsel at multiple times throughout the proceeding. That's why he hired this attorney to advise him. This is, this is, you know, if the government is conceding deficient performance. This is the moment of the performance. And so I wouldn't. I wouldn't discount an alternative scenario where the lawyer was also proceeding differently and how that would have affected the outcome as well. It's not a more likely than not. Here the, you know, the, the weight of, of what this court needs to do to make the legal conclusion. Is it sufficient to undermine the outcome? And I think the conversation today. Shows so many points in the record that are unclear. And I believe that that meets the standard in Mr. Baker's case that 57 years. Not being on the table and all the other formulations of what would occur really. Show a reasonable probability that if he was, but for counsel's error, he would have pleaded guilty. And so I ask that just the, this court to remand to the district court. Other questions. Okay. Thank you. From both counsel. We would ask the transcript. Be. Of today's argument. And. The other group can pick up that cost. Thank you so much. I will take the case under advisement.